IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMALE WHITE,<br><br>Defendant. | Case No. 3:21-cr-00036<br><br>**MOTION TO REVOKE MAGISTRATE JUDGE'S ORDER SETTING CONDITIONS OF RELEASE** |

The United States of America, by Nicholas W. Chase, Acting United States Attorney for the District of North Dakota, and Dawn M. Deitz, Assistant United States Attorney, hereby moves this Court, pursuant to Title 18, United States Code, Sections 3145(a)(1) and 3142, as the Court having original jurisdiction over the offenses charged in the Superseding Indictment in this case, for an order:

1. Revoking Magistrate Judge Curtis Ivey's Order in Case No. 2:20-mj-30093 (E.D. Mich.), issued on or about February 26, 2021, permitting release of the Defendant on conditions; and,

2. Ordering the detention of the Defendant pending trial.

This motion is based upon the record and documents filed in the above-captioned matter in the District of North Dakota and the record of the proceedings in the Eastern District of Michigan.

Title 18, United States Code, Section 3145(a)(1) states: "If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court – (1) the

attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." The motion is to be determined promptly. See 18 U.S.C. § 3145(a). The charged offense is venued in the District of North Dakota. Therefore, this Court is the court of original jurisdiction.

A court may order a defendant detained pending trial if the Court finds there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required, or the safety of any other person or the community. See 18 U.S.C § 3142(e). The factors to be considered by the Court in determining detention or release on conditions are contained in 18 U.S.C. § 3142(g).

The Defendant here is a substantial flight risk and danger to the community or any other person, and should be detained pending trial, for the following reasons:

    a.    Defendant and a host of co-conspirators were indicted in the District of North Dakota on February 17, 2021. (Doc. 2)  The Indictment charges Defendant in Count One with the offense(s) of:  Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in connection with an ongoing interstate drug trafficking scheme between Michigan and North Dakota.  The Defendant faces a minimum mandatory ten years, maximum penalty of life imprisonment.

    b.    By way of proffer, the United States notes the Defendant has been traveling to North Dakota for nearly a year for the sole purpose of trafficking controlled substances.  The Defendant predominately conducted this criminal activity in Fort Berthold Indian Reservation and Minot, North Dakota.  In March 2020, the Defendant was arrested and charged as a juvenile in Montrail County, North Dakota, for Possession with Intent to Distribute a Controlled Substance.  The Defendant gave a false name to law enforcement, stating he was "Kemani Dabney."  The Defendant was in possession of approximately 50 opiate pills concealed on his person.  Co-conspirators inside of the vehicle were also found in possession of pills and United States currency.  In November 2020, the Defendant had contact with North Dakota law enforcement on two occasions.  During the first encounter, westbound entering North Dakota, marijuana was located but no

US currency.  During the second encounter, eastbound exiting North Dakota, the Defendant and co-defendant Deeangelo White were in possession of nearly $3,000.  Despite those law enforcement contacts, the Defendant continued to travel to North Dakota for the sole purpose of trafficking controlled substances.  See Government Exhibit 12.

c.    Based upon the nature of the offense alleged in Count One of the Indictment, and the penalties associated therewith, there is a presumption for detention of the Defendant pending trial, subject to rebuttal by the defendant.  18 U.S.C. § 3142(e)(3).  That presumption is not rebutted by the available information.

d.    The Defendant was arrested in the Eastern District of Michigan on the Indictment on or about February 25, 2021.  See Government Exhibit 13 (arrest report).  The Defendant appeared before the Magistrate Judge.  A detention hearing was held on March 1, 2021.  The US Probation Office prepared a Pretrial Services Report for the Court.  See Government Exhibit 12.  The report recommended release on various conditions as noted.  The Magistrate Judge ordered the Defendant released.

e.    The Defendant lacks any ties to the District of North Dakota, outside of the alleged criminal activity.  See Government Exhibit 12.  While the Defendant may have ties to the District where he was arrested (E.D. Michigan), the Defendant will not be required to appear in that District, but instead in the District of North Dakota.  Therefore, any argument that the Defendant's community ties support release is weak and cannot overcome the presumption for detention.  The Court must evaluate the risk of flight from the perspective of the charging District.  In United States v. Alverez-Lopez, 2014 WL 2882906, *2 (M.D. Fla. 2014), the Court stated: "In the federal system, courts look to the ties of a defendant to the judicial district in which the criminal charges have been brought in assessing the risk of flight. . . [c]onsidering a defendant's ties to another district runs counter to whole consideration of risk of flight determination."   While this decision also holds no precedential value on this Court, its point is well taken.  The Defendant will be over 1,100 miles outside of this District if he is released to reside in Michigan.  He will have every opportunity to flee, and be unaccounted for over a significant period of time before anyone from North Dakota will be notified and able to take action.  Further, the Defendant's ties to the Eastern District of Michigan are tenuous.  During his arrest, the Defendant claimed he had not been to North Dakota in "a few years" however, the Defendant had contact with law enforcement in North Dakota as recently as November 2020.

f.    More importantly, and to exemplify the point made by the Court in Alverez-Lopez, the Defendant here has demonstrated that if given the opportunity

to flee or fail to appear, he will do so.  The risk of flight means more than active hiding or concealment from authorities.  It also means the risk the Defendant will simply not show up for his court hearing(s).  In August 2020, the Defendant was the driver of a motor vehicle fleeing from law enforcement on VanDyke in Warren, MI.  A Warrant Police officer attempted to stop the vehicle, and instead of stopping, the defendant fled from the police at a high rate of speed.  Initially, the defendant slowed down for a red light at VanDyke and 12 mile road, but then drove in the turn lane around the other stopped vehicles and proceeded through the red light at a high rate of speed.  The Defendant proceeded down VanDyke at extremely high speeds, exceeding 100 miles per hour. As the Defendant approached 11 mile he crashed into other vehicles, including a Dodge truck and a semi-truck.  The crash was so violent that the Jeep the Defendant was driving caught on fire.  The Defendant was pinned between the driver's seat and the steering column and had an open fracture to his left leg.  Law enforcement was eventually able to free the Defendant from the driver's seat of the vehicle as flames were penetrating through the firewall and into the floorboard area.  The officers on the scene located two firearms in the vehicle and also recovered a fired 9mm cartridge casing on the rear floorboard.  Also, in the wreckage around the Jeep, the officers located another fired 9mm cartridge casing and a large amount of loose United States currency.  The Jeep that the Defendant was driving was stolen and in fact had been reported stolen on August 13, 2020, from the Chrysler Assembly Plant in Sterling Heights without keys.  Two of the firearms recovered from the vehicle were linked to recent shootings in Michigan, including a shooting of a residence and of a female victim.

g.       The Defendant's social media further demonstrates the Defendant's danger to the community.  The Defendant's social media is littered with photographs of him possessing firearms.  See Government Exhibit 1-11.  Exhibit 6 was posted on "5674mell" Instagram account on November 9, 2020.  The photograph depicts two individuals holding large amounts of United States currency in front of their faces.  The comment below the photo states "Every trip I know I'm facing a fed sentence."  That statement is also followed by hashtags "BIHReub" and "BIHwaun" which are hashtags commonly utilized by Reub Gang members.  Exhibit 9 is an Instagram chat between the Defendant and co-defendant, Romel Rambus.  During this conversation, Rambus offers to sell an F&N 9mm pistol to the defendant for $350.  They then discuss another Glock firearm that Rambus owns.  The Defendant offers to buy the Glock for $400 and Rambus declines because he paid $500 for the Glock and $350 for the F&N.  In Exhibit 10, the Defendant and co-defendant Rambus have a discussion indicative of pill trafficking.  In this conversation the Defendant twice states that he "needs 200 beans."  During this investigation, the co-defendants commonly used the term "beans" to refer to the oxycodone and fentanyl pills they were trafficking.  Later in the conversation, the Defendant tells Rambus that he has a driver and a stuffer

4

lined up. This is consistent with the method that this drug trafficking organization transported pills to North Dakota to avoid detection by law enforcement.

h.  As alleged in the Indictment, and as the grand jury found probable cause to believe, the Defendant conspired to distribute highly dangerous and addictive opiate drugs, including oxycodone and fentanyl, and did so over the course of a significant period of time. The Defendant did so by traveling to North Dakota from Michigan. Thus, the Defendant (despite ties to another district), has the means and ability to freely move interstate, and does so without regard to outstanding warrants.

i.  The risk that the Defendant will find the means and ability to continue to engage in similar conduct and further endanger the community is extraordinarily high. Intervention by law enforcement and courts (either through arrest and/or conviction) has not deterred the Defendant's conduct. Simply placing conditions on the Defendant has been unsuccessful in deterring alleged criminal conduct.

Accordingly, the United States respectfully asks the Court to promptly determine this motion pursuant to Title 18, United States Code, Section 3145(a), and revoke the order issued by the Magistrate Judge releasing the Defendant on conditions, and ordering his detention pending trial.

Dated: March 1, 2021

NICHOLAS W. CHASE
Acting United States Attorney

By:  /s/ *Dawn M. Deitz*_____
DAWN M. DEITZ
Assistant United States Attorney
ND Bar ID 06534
655 First Avenue North, Suite 250
Fargo, ND  58102-4932
(701) 297-7400
dawn.deitz@usdoj.gov
Attorney for United States